## Morris Emmerson and Charles Burnett v. Johnson Hutchinson.

1. DECEIT—*Basis of the Action for.*—Indefinite statements, expressions of opinion, conjectural views of cost of the erection of a building, expense or value, can not be made the basis of an action for deceit.   One who relies upon such statements, etc., does so at his peril and must take the consequences of his own imprudence.

2. SAME—*Proof of Conspiracy Necessary.*—An action for deceit based upon a conspiracy of two persons can not be sustained upon proof implicating but one of the parties.

**Action for Deceit.**—Appeal from the Circuit Court of Jefferson County; the Hon. EDMUND D. YOUNGBLOOD, Judge, presiding.   Heard in this court at the August term, 1895.   Reversed.   Opinion filed March 7, 1896.

C. H. PATTON and NORMAN H. MOSS, attorneys for appellants, contended that the instructions given for plaintiff omit the qualification always necessary to constitute the actual fraud charged in the declaration, that the representations were known to be false.   This omission renders these instructions utterly bad and misleading.   Sims v. Klein, Breese, 234, 302; Mitchell v. Deeds, 49 Ill. 416; Walker v. Hough, 59 Ill. 378; Weatherford v. Fishback, 3 Scam. 170; Tone v. Wilson, 81 Ill. 529; Clement v. Boone, 5 Ill. App.

111; McDaniel v. Bryan, 8 Ill. App. 299; Sherbourne v. T(-bey Fur. Co., 19 Ill. App. 615; Knight v. Gaultuley, 23 Ill. App. 378; Ward v. Lennen, 25 Ill. App. 164; Schwabacker v. Riddle, 99 Ill. 343; Holden v. Ayer, 110 Ill. 453; Wheeler v. Randall, 48 Ill. 182; Hiner v. Rechter, 51 Ill. 249; Merwin v. Arbuckle, 81 Ill. 501; Linington v. Strong, 111 Ill. 160; White v. Watkins, 23 Ill. 480; Allen v. Hart, 72 Ill. 104; Fountleroy v. Wilcox, 80 Ill. 477; St. L. & S. E. Ry. v. Rice, 85 Ill. 406; Wharf v. Roberts, 88 Ill. 426.

Where the evidence is conflicting the instructions must be accurate. Error in this regard is not cured by other good instructions in the series or for opposite party. The jury in no case should be left to choose between conflicting instructions. It is impossible for the court to determine which rule they follow. C., M. & St. P. Ry. v. Mason, 27 Ill. App. 455, citing Hoge v. The People, 117 Ill. 35. See also Brownlee v. Alexis, 39 Ill. App. 142; L. S. & M. S. Ry. v. May, 33 Ill. App. 367; Hulloway v. Johnson, 129 Ill. 369; Craig v. Miller, 133 Ill. 307; T., St. L. & K. C. R. R. v. Cline, 135 Ill. 48; S. & L. Co. v. Kankakee, 128 Ill. 177; Elgin v. McCollum, 23 Ill. App. 186; Fernandes v. McGinnis, 25 Ill. App. 165; Dempsey v. Bowen, 25 Ill. App. 192; Wilhert v. Stafford, 25 Ill. App. 218; Star & Crescent Mill Co. v. Thomas, 27 Ill. App. 137; C. & W. I. R. R. v. White, 26 Ill. App. 586; Parmlee v. Farro, 22 Ill. App. 467; C., B. & Q. R. R. Co. v. Flint, 22 Ill. App. 502; L. S. & M. S. R. R. Co. v. Elson, 15 Ill. App. 83; Kraus v. Thileau, 15 Ill. App. 482; Brown v. Monson, 51 Ill. App. 488; Smith v. The People, 142 Ill. 117; Eller v. The People, 153 Ill. 344.

ALBERT WATSON and G. B. LEONARD, attorneys for appellee.

A person induced to enter a contract by fraud is not bound by it, but may abandon the contract and sue for his damages. Addison on Torts, 1004; 1 Chitty's Pl. 137, note 4; Hilliard on Torts, Secs. 4, 5 and 12; Ward v. Wiman, 17 Wend. 193; Eams v. Morgan, 37 Ill. 260.

What is a willful misrepresentation is correctly explained

in the instructions to be where a person recklessly makes a false representation of the truth of a material matter of which he knows nothing, or had no apparently good reason for believing to be true. There is no authority contradicting the position here taken by the court, but all the books upon this point say that such a statement, so made and acted upon by another, is a willful false statement, and that it will not lie in the mouth of the author to say he did not know he was making a false statement. In other words, in such case the law makes him know it, and he is estopped to deny it. Cooley on Torts, 300, 474; Bebee v. Knapp, 28 Mich. 53, 76; Litchfield v. Hutchinson, 117 Mass. 195; Ind., P. & C. Railroad Co. v. Gyng, 63 N. Y. 653; Eams v. Morgan, 37 Ill. 260; McKowen v. Furgurson, 47 Ia. 636; Smith v. State, 55 Miss. 513; Beasley v. The State, 59 Ala. 20; Borders v. Cattleman, 42 Ill. 103; Bigelow on the Law of Fraud, 410; Thompson v. Lee, 31 Ala. 292; Hicks v. Stevens, 121 Ill. 196; Penn. R. R. Co. v. Ogden, 35 Pa. St. 72; Gordon v. Grand Street Railroad Co., 40 Barb. 550; Ert v. Henderson River Railroad Co., 35 N. Y. 28; Wabash v. Hall, 66 N. C. 233; Oswald v. McGehee, 28 Miss. 340; McClellan v. Scott, 21 Wis. 81; Starkweather v. Benjamin, 32 Mich. 305; Kendal v. Wilson, 41 Vt. 567; Pierce v. Wilson, 34 Ala. 603.

Proof of the falsity of the facts misrepresented is sufficient proof that appellants knew them to be false. Cooley on Torts, 583; Morse v. Dearborn, 109 Mass. 593; Ruff v. Farrett, 94 Ill. 479.

MR. JUSTICE SAMPLE DELIVERED THE OPINION OF THE COURT.

This action for deceit was based upon the following declaration given in substance :

That the defendant Morris Emmerson, on the 6th day of June, 1892, desired to bargain with the plaintiff (Hutchinson) and Charles Burnett, to furnish all materials and erect a brick house for Emmerson on his premises in Mt. Vernon. And the plaintiff being a man of no education and wholly unable to estimate the cost or amount of materials necessary

for said building, all which facts the defendant then knew, the defendants, to induce the plaintiff, jointly with said Burnett, to enter into a contract with the defendant Emmerson to construct said building for a much less price than the same was worth, represented to the plaintiff that they had then lately been to the city of Evansville, in the State of Indiana, to learn and had then and there learned the cost of the necessary material therefor, and such cost then being unknown to the plaintiff, and was by the defendants fraudulently represented to the plaintiff as being less than it in fact was, combined and confederated together then and there to deceive and cheat the plaintiff, willfully, falsely and fraudulently estimated the cost and amount of material necessary for said building for and to the plaintiff, and falsely and fraudulently represented to him that said building could be constructed according to the plans and specifications therefor for the sum of $2,850 and give a profit of $200 to the builders, which representation the said defendants then and there knew to be untrue; and the plaintiff then and there having no knowledge of the probable or approximate cost of said building, and then and there relying wholly upon the said false and fraudulent estimate, representations and statements of the defendants, as they then well knew, as to what it would cost to procure the necessary materials and construct said building, the plaintiff then and there with said Burnett jointly contracted in writing to construct said house according to the plans and specifications for the sum of $2,850, whereas in truth the said building could not be constructed for less than $3,600, as the defendants well knew; and by reason of the false and fraudulent estimate and representation the plaintiff was deceived, and thereby induced to, jointly with said Burnett, enter into said contract, and they erected said building according to the contract, the plaintiff paying therefor, whereby the plaintiff was, by means of the premises, deceived, and compelled to and did expend a large sum, to wit, $3,600, in the erection of said building, to his damage $1,000.

On trial before a jury a verdict was returned against ap-

pellants for the sum of $700, which was sustained by the court and from which this appeal was taken.

The principal error assigned is that the evidence does not support the judgment.

The case is somewhat peculiar and therefore the entire evidence was read by the court.

The gist of the charge is that Emmerson conspired with Burnett, Hutchinson's partner, to deceive Hutchinson by willfully making false representations as to the cost of the material for the building. If they did not conspire there could be no recovery. If Burnett did not practice deceit on Hutchinson, and join with Emmerson in doing so, then under the evidence this judgment can not be sustained. If Burnett thought he was telling the truth, speaking honestly, in estimating the cost of the building, then it can not be said under this evidence that Emmerson was misrepresenting the facts. The bare facts of this case, as disclosed by the evidence, are that Emmerson desired to construct a brick building on the site where he had another building and that Burnett made the plans and specifications for the same; that he and Burnett went to the city of Evansville to see about the cost of certain wood work that would enter into its construction. There is no pretense they went there to see about the cost of the brick work. They got certain prices for certain classes of material. Thereafter Burnett and a man by the name of Webber, after estimating the cost, went to see Emmerson and offered to construct the building for $2,850, and the material of the old building, which was estimated to be worth $200. Webber was not a man of financial responsibility and a bond was required, which not being given, nothing was done. Thereafter Burnett saw Hutchinson, who was in the business of making brick, and had constructed some brick buildings. He and Hutchinson, after talking the matter over, made the same proposition to Emmerson that had been made by him and Webber, and they entered into a written contract to construct the building according to the plans and specifications which Burnett had drawn up. Hutchinson had seen the

plans and, as the weight of the evidence shows, the plans were in the possession of the firm at least a day before the contract was signed. There is no question but that Hutchinson had every opportunity to make or have made a correct estimate of the cost of the building, as near as that could be done by any one. In view of these facts, what right had he to rely upon the estimated cost or amount of material as made by Emmerson? There was no trust or confidential relation existing between them. They were dealing with each other at arm's length, representing respectively the opposite sides of a negotiation that preceded the contract. Naturally each one was trying to get as good a contract as could fairly be obtained, each supposed to know his own business, neither one having information that he was bound to disclose to the other, as all facts were equally open to both.

It has been repeatedly held in such cases that the law will not relieve one from his own want of ordinary prudence. Eames v. Morgan, 37 Ill. 260; Schwabacker v. Riddle, 99 Ill. 343; Hicks v. Stevens, 121 Ill. 194; Ward v. Luneau, 25 Ill. App. 164; Noetting v. Wright, 72 Ill. 390.

What was the character of the representation alleged to have been made? Appellee claims they represented they had obtained prices of material at Evansville and that the building could be constructed for $2,600, or $2,650 at the outside, leaving a profit of $200. He says he supposed they had figured the cost carefully, knew what they were talking about, and relying on them, entered into the contract. Appellee knew the amount stated was but an estimate, based doubtless on some calculation, yet still only an estimate. He knew no one could accurately determine the cost in advance. Experienced builders differ in their bids on such jobs, often as much as from $300 to $500; material-men vary widely in their bids, proportionately, as every man of experience knows. Appellee had been a brick maker for forty years and had constructed some buildings. He knew, evidently, that men varied greatly in their estimates of the cost of the construction of buildings, and therefore must

have known, as far as Emmerson was concerned, at least, if there was no confederation, that his estimate would naturally be low and that it was largely a matter of opinion, based upon data equally accessible to both, and with which appellee was more familiar and experienced, as Emmerson was a printer, and states he could not figure the amount of brick that would be required.

Indefinite statements, expressions of opinion, conjectural views of cost, expense or value, can not be made the basis of an action for deceit. Noetting v. Wright, 72 Ill. 390; Dillman v. Nadlehoffer, 119 Ill. 575; Wait's Actions and Defenses, 3 Vol. 435. One who relies upon them does so at his peril and must take the consequences of his own imprudence. Willing v. Schiller, 27 Ill. App. 286. The estimate of the cost of construction by Emmerson was more a matter of conjecture than the statement of the cost of a farm or what it could be sold for, and yet it has been frequently held such statements by the vendor of land can not be made the basis of an action for deceit. Dillman case, *supra*.

As before stated, the only ground of action is the alleged confederation between Emmerson and Burnett to deceive and mislead Hutchinson. The two latter were in confidential relations, and Hutchinson might well rely on Burnett's statements. If the latter and Emmerson conspired to and did deceive and defraud Hutchinson, an action would lie. But what is the evidence of such conspiracy? Burnett was one of appellee's principal witnesses, and he states that he told the truth. He states: "Q. I will ask you now if the material that went into this building didn't cost more than you and Mr. Emmerson represented to Mr. Hutchinson that it would cost? A. Yes, sir. Q. Considerable more? A. Yes, sir. Q. How long have you been in the building business? A. About fifteen years." After stating that he got prices for material at Evansville, but did not purchase it there: "Q. Did you tell Mr. Hutchinson anything but the truth about your figures? A. No, sir; I told him the truth clear through. Q. Did Mr. Emmerson tell him the

truth? A. Yes, sir. Q. You honestly believed that at the time? A. Yes, sir; I did. Q. That was your honest judgment from the information you got about the cost of this and that material over there? A. Yes, sir. Q. It was only a question of judgment between you as to the material? A. Yes, sir. Q. And anybody else figuring on it would have their judgment about it? A. Yes, sir." There is not a scintilla of evidence to show a conspiracy between Emmerson and Burnett to misrepresent the facts. There is nothing to indicate that Burnett would be in any way remunerated by Emmerson for so doing. No suggestion was made by Emmerson to Burnett to see Hutchinson and get him into the contract. Hutchinson was anxious to get the job—Burnett's statement of the facts in that regard are not denied. He says: " Q. How did he (Hutchinson) happen to go up there with you? A. One Sunday night I went down to the brick kiln, and he had gone out to Walnut Hill, or some place out there; I saw his son, and he said his father would not be home until Sunday night; Sunday night he came, and came over to my house, I think after I had gone to bed. * * * I told him I believed I had a chance to get a job building, brick work, carpenter work and all. I talked to him about the matter in general. On Monday morning he came over, and we both went up to Mr. Emmerson's office."

The theory of appellee was that he was to have nine dollars per thousand for his brick laid in the walls, and as more brick was required than estimated, or was represented to him it would take, he feels injured.

The contract did not provide he was to have any certain price for his work or his brick. The contract was for a completed building for a certain consideration. He certainly could have computed nearly the number of brick that would be required and the expense of laying them, or could have had it done, while Burnett, his partner, could estimate the cost of the other material and work, only approximately, however. Burnett, being a carpenter and house builder, the purchase of material, other than the brick,

seems to have been left to him. He did not purchase at Evansville, where he had obtained prices, but at Mt. Vernon, where he had to pay more. How much more the evidence does not disclose. The difference may have been the contemplated profits. Emmerson had nothing to do with the purchase of the material, or with the management of the construction of the building, which, there is evidence tending to show, was not economical.

This judgment can not be sustained. It is therefore reversed without remanding.